IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL ACTION NO. 2:14-CV-00011-RLV

| TIMOTHY O'NEAL BRAMBLETT, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**THIS MATTER IS BEFORE THE COURT** on the Plaintiff's Motion for Summary Judgment (Doc. No. 9) and Defendant Carolyn W. Colvin's Motion for Summary Judgment (Doc. No. 12). Because the parties' filings having been fully briefed and are currently pending, this matter is now ripe for disposition.

For the reasons that follow, the Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**, the Defendant's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**, and the decision of the Commissioner is hereby **AFFIRMED**.

## I.  BACKGROUND

On October 17, 2008, Plaintiff Timothy O. Bramblett filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 405, *et seq.*, alleging an inability to work due to a disabling condition beginning March 12, 2008. [Doc. No. 8-8] at pp. 2-15. The Commissioner of Social Security (the "Commissioner" or "Defendant") first denied Plaintiff's application in February 2009 and, upon reconsideration, again denied the application in June 2009. [Doc. No. 8-6] at pp. 4-7,

11. On June 19, 2009, Plaintiff timely filed a written request for a hearing. [Doc. No. 8-6] at p. 11. Plaintiff's request was granted and a hearing was held before Administrative Law Judge ("ALJ") Gregory Wilson on October 6, 2010. [Doc. No. 8-6] at p. 11. During these proceedings, the Plaintiff's alleged disability onset date was amended to July 6, 2008. [Doc. No. 8-6] at p. 13; *see also* [Doc. No. 8-3] at p. 16.

The ALJ issued his decision denying Plaintiff's disability claim on December 7, 2010. [Doc. No. 8-6] at pp. 11-23. Plaintiff appealed the ALJ's decision to the Appeals Counsel and, on July 23, 2012, the Appeals Counsel remanded Plaintiff's claim to the ALJ for a new hearing. *See* [Doc. No. 8-6] at pp. 30-32. On September 19, 2013, ALJ Wilson conducted a new hearing on the Plaintiff's claim. [Doc. No. 8-3] at p. 16. On November 12, 2013, ALJ Wilson again issued a decision denying Plaintiff's disability claim – this time in a thirty-three page opinion. [Doc. No. 8-3] at pp. 16-49.

The ALJ denied the claim on the basis that Plaintiff was not "disabled," as such term is defined by statute and applicable regulations, for the period between July 6, 2008 and the date of the decision. [Doc. No. 8-3] at pp. 16-49. Plaintiff timely requested review of the ALJ's decision and, on January 31, 2014, the Appeals Council denied review. [Doc. No. 8-3] at pp. 2-4. Consequently, as a matter of law, the ALJ's decision became the final decision of the Commissioner.

On March 28, 2014, Plaintiff filed his complaint with this Court for the purpose of seeking judicial review of the ALJ's November 12, 2013 decision. [Doc. No. 1]. Subsequently, Plaintiff and Defendant filed cross-motions for summary judgment. [Doc. No. 9]; [Doc. No. 12]. These motions are now ripe for this Court's review.

## II. DISCUSSION

### A. <u>Standard of Review</u>

Pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to determining: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that her decision is supported by substantial evidence, the Commissioner's determination may not be overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a *scintilla* and must do more than create a suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Indeed, "[i]t means such relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Smith*, 782 F.2d at 1179; *Rhyne*, 2010 U.S. Dist. LEXIS 142595, at *7-9. Critically, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015). The standard is met by "less than a preponderance" of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

"In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, *supra*, at 1456; *Rhyne*, 2010 U.S. Dist. LEXIS 142595, *9.

Therefore, the issue before this Court is not whether Plaintiff *is* disabled, but whether the Commissioner's finding that he is *not* disabled is explained and supported by substantial evidence, and that such decision was reached based upon a correct application of the relevant law.

      B.      Five-Step Sequential Analysis

The Social Security Administration (the "SSA") has defined disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to last for a period of at least 12 months. *See* 20 C.F.R. § 404.1505(a). To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See*, *e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). If at any step in the sequential evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

To that end, federal law requires that an ALJ evaluate a claimant's application for disability benefits by considering whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Part 404, Subpart P,

Appendix 1 (the "Listings"); (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment (i.e., from performing "other work"). 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of his insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step-five, the burden of production shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, work experience, and residual functional capacity. *Grant*, 699 F.2d at 191.

Following a hearing and a review of the record evidence, the ALJ entered his decision denying disability benefits to the Plaintiff. In his decision, the ALJ made a variety of factual findings regarding the Plaintiff's work history, medical history, and medical conditions. At step-one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since July 6, 2008. [Doc. No. 8-3] at pp. 19-20. At step-two, the ALJ found that the Plaintiff suffered from the following severe impairments: lumbar spine degenerative disc disease; status post right knee replacement; and major depression.[1] *Id.* at p. 20; *see* 20 C.F.R. §§ 404.1520a, 416.920a; S.S.R. 96-8p, 1996 SSR LEXIS 5. The ALJ also found that Plaintiff suffers from the following non-severe impairments: DAA ("Drug Addiction and Alcoholism") in remission; obesity; mild cervical spine degenerative disc disease; and a history of left ankle fracture. [Doc. No. 8-3] at p. 20.

At step-three, the ALJ's written decision determined that Plaintiff's impairments, taken alone or in combination, do not "meet[] or medically equal[] one of the listed impairments" found

---

[1] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. *See Bowen v. Yuckert*, 482 U.S. 137 (1987).

in the Listings. [Doc. No. 8-3] at pp. 20-25.

Prior to beginning his step-four analysis, the ALJ determined the Plaintiff's residual functional capacity (the "RFC"). Specifically, the ALJ found as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following limitations: lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand 2 hours in an 8-hour workday; occasionally push/pull with right lower extremity; never climb ladder/rope/scaffolds; occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to temperature extremes and hazards (heights and moving machinery); not perform a job that would require commercial driving; perform simple, repetitive, and routine one and two step tasks; require a low stress work environment, defined in functional terms as having occasional public contact; needs to use a cane to ambulate for balance purposes; and walking would be intermittent with no fixed time and would walk as able.

[Doc. No. 8-3] at p. 25. The ALJ represented that, in developing the RFC, he relied on his assessment of the Plaintiff's credibility, record evidence of the Plaintiff's medical history, medical opinion evidence, and hearing testimony. *Id.* at pp. 25-26. Once the RFC was developed, the ALJ proceeded to steps four and five of his analysis.

At step-four, the ALJ found that the Plaintiff is unable to perform any past relevant work. [Doc. No. 8-3] at p. 47. However, under the step-five analysis, the ALJ determined that Plaintiff is capable of performing the functions of "other work." [Doc. No. 8-3] at pp. 48-49. The ALJ based this finding on testimony given by a qualified vocational expert. *Id.* Based on the vocational expert's testimony and the record evidence, the ALJ determined that given the Plaintiff's age, education, experience, and residual functioning capacity, he would be able to perform the limited work-related functions associated with "light" and "unskilled" occupations, such as a packer, inspector, and assembler. *Id.* at p. 48. The ALJ concluded that such occupations exist in significant numbers in the national economy and thus a finding of "not disabled" was appropriate under the

regulations. *Id.* at pp. 48-49. The ALJ disregarded hypotheticals posed to the vocational expert by the Plaintiff's attorney because the ALJ concluded that such hypotheticals were based "solely" on evidence to which he gave little weight, such as the claimant's hearing testimony and his physicians' opinions. *Id.*

Plaintiff now challenges the ALJ's decision. Plaintiff argues that the ALJ's decision errs in three respects: first, the ALJ purportedly erred by giving little weight to the opinions of Plaintiff's treating sources; second, the ALJ purportedly erred in assessing Plaintiff's credibility; and lastly, the ALJ purportedly erred in posing his hypothetical to the vocational expert, which Plaintiff contends was incomplete. The Court will address each of these contentions in turn.

C.    Weight Assigned to Treating Physicians' Evidence

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Social Security regulations require an ALJ to "evaluate every medical opinion" regardless of its source. 20 C.F.R. §§ 404.1527(c), 416.927(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro*, 270 F.3d at 178. The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996), but the ALJ must nevertheless assign a weight to the medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

In discounting the opinions of a treating source, the ALJ must give "good reasons" for doing so. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's explanation of these "good

reasons" "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2P, 1996 WL 374188, at *5 (July 2, 1996). However, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence). Further, a treating source's opinion that rests predominately upon a claimant's subjective complaints is of discounted probative value. *See* S.S.R. 96-7p, 1996 SSR LEXIS 4; *accord Morris v. Barnhart*, 78 F. App'x 820, 824-25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion." (citing *Craig*, 76 F.3d at 590 n.2)).

Plaintiff argues that the ALJ improperly gave less than controlling weight to the opinions of Dr. Clayton (Plaintiff's treating physician) and Dr. Keeley (Plaintiff's treating psychiatrist).[2] Plaintiff argues that the ALJ improperly accorded "little weight" to the doctors' assessments inasmuch as the ALJ found that such assessments were not supported by the "record as a whole." [Doc. No. 10] at pp. 8-15. Plaintiff contends that the ALJ's decision does not give "good reasons" for the weight accorded to Drs. Clayton and Keeley's opinions because, essentially, the ALJ disregarded other substantial evidence that is consistent with the doctors' medical determinations. *See id*.

"An ALJ's determination as to the weight to be assigned to a medical opinion will generally

---

[2] The parties have not disputed that Drs. Clayton and Keeley qualify as Plaintiff's "treating sources" for purposes of this disability review.

not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (citations omitted); *see*, *e.g.*, *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam). This Court is limited to reviewing the ALJ's decision based on the record before it (i.e., the reasons stated by the ALJ in his or her decision), and may not endorse *post hoc* justifications for the ALJ's determinations. *See*, *e.g.*, *Torres v. Colvin*, 224 Soc. Sec. Rep. Service 523, at *15 (W.D.N.C. Jan. 5, 2016) (Voorhees, J.) ("On review, the Court must not rationalize an ALJ's decision by raking through the administrative record, as a whole, intent upon finding the factual support necessary to uphold [an] ALJ's conclusory analysis. Expeditions of that sort improperly force the district courts to cobble together a factual basis for the ALJ's conclusions – in effect rendering the district court the fact-finder in the administrative process. Such a practice would effectively usurp the ALJ's role in the administrative process and give the ALJ a 'free pass.' This is improper." (internal citations omitted)); *accord Radford*, 734 F.3d at 295. Here, the ALJ's decision to give the treating sources' opinions "little weight" was based on "good reasons," was not specious, and is supported by substantial evidence.

The record contains medical opinions from Dr. Clayton, dated October 2010 and September 2012. Dr. Clayton's 2010 opinion states that the Plaintiff has several physical and mental limitations ranging from an inability to deal with work-related stressors to an inability to stand, sit, or walk for any significant period of time. *See* [Doc. No. 8-18] at pp. 2-6. In 2012, Dr. Clayton also opined that the Plaintiff would be incapable of "ever be[ing] gainfully employed again, . . . [and] [would] not be able to go back to work." [Doc. No. 8-18] at p. 61. In his decision, the ALJ construed Dr. Clayton's opinions to advocate, in effect, for the Plaintiff to be limited to "less than a full range of sedentary work." [Doc. No. 8-3] at p. 39.

The record also contains an opinion from Dr. Keeley, dated November 2010. Dr. Keeley's opinion primarily consists of a standard form from which a doctor can choose to "check" certain symptoms, impairments, and diagnoses allegedly suffered by a claimant. In the form, Dr. Keeley "checked" several boxes, such as an inability to deal with stress, an inability to perform at a consistent pace, persistent mood disturbance, and thoughts of suicide. *See* [Doc. No. 8-18] at pp. 8-9. In the form, Dr. Keeley described his treatment relationship with Plaintiff as having occurred "in years past" and indicated that he had only recently evaluated Plaintiff on November 9, 2010 (the day before the evaluation form was completed). *See id.* at p. 7. Dr. Keeley opined that Plaintiff would be unable to work a regular job on a sustained basis because his physical and emotional condition rendered him "incapacitated." [Doc. No. 8-18] at p. 10.

The ALJ declined to give controlling weight to either Dr. Clayton or Dr. Keeley's prognoses. Instead, the ALJ chose to accord "little weight" to Dr. Clayton's conclusions as to the Plaintiff's functional capacity to work because, in the ALJ's view, the record as a whole does not support the doctor's findings. [Doc. No. 8-3] at p. 39. Similarly, the ALJ accorded "little weight" to Dr. Keeley's opinion because it is "not supported by the medical evidence of record." [Doc. No. 8-3] at p. 41. Plaintiff contends that these determinations were made erroneously.

In the Court's experience, some ALJs would halt his or her analysis with the above-discussed conclusory findings alone. However, ALJ Wilson, in a thirty-three page decision, which should be commended for its thoroughness and specificity, explicitly supported his determinations with numerous citations to the record and a lengthy discussion of the evidence before him. *See* [Doc. No. 8-3] at pp. 39-41. ALJ Wilson's detailed discussion of the relevant evidence provides a strong foundation upon which this Court may affirm his decision.

Based on the record developed during the administrative process, Dr. Clayton's opinion was discounted because ALJ Wilson found that Plaintiff had consistent strength and sensation in his lower extremities prior to his August 2011 knee replacement. [Doc. No. 8-3] at p. 39. The ALJ also found that Plaintiff had normal range of motion on several different occasions. *Id*. In addition, ALJ Wilson found that, throughout 2009 to 2011, Plaintiff's back and lower extremity exams were unremarkable. *See id.* at p. 40. While Plaintiff complained of some back pain and showed a more limited range of movement during an April 2013 examination, the ALJ counterbalanced this evidence with a finding that Plaintiff was still capable of performing several activities of daily living that are inconsistent with Dr. Clayton's prognosis, such as performing household chores, shopping, caring for others (his uncle and mother), and visiting family in other states. *See id.* at p. 40.

Moreover, ALJ Wilson found that various medical records are inconsistent with Dr. Clayton and Dr. Keeley's conclusions that Plaintiff's mental disorders (i.e., his bipolar disorder, anxiety, and chronic pain syndrome) are debilitating in nature. Specifically, ALJ Wilson found that contrary record evidence demonstrates that Plaintiff had a stable mood and had a well-maintained mental disposition for a multi-year period. *See* [Doc. No. 8-3] at pp. 40-41. ALJ Wilson also found that Plaintiff engaged in several activities of daily living that are inconsistent with a finding of mental disability. These activities included attending social gatherings on a regular basis and maintaining relationships with others. *Id.*

It is not this Court's duty to make factual findings related to Plaintiff's disability determination. *See Radford*, 734 F.3d at 295-96; *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Similarly, though there may be substantial evidence in the record supporting the Plaintiff's assertion of disability, if substantial evidence *also* exists to support a finding of no disability, then

it is not this Court's province to re-weigh that evidence. *See Torres*, *supra*, at \*15-16 ("Fourth Circuit precedent makes clear that it is the ALJ who must resolve conflicts in the evidence, make credibility determinations, muster factual support for his decision, reach a decision, and explain his reasoning for reaching that decision — not this Court." (citing *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015); *Radford*, 734 F.3d at 296; *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996))). Rather, it is this Court's duty only to review the ALJ's factual findings to determine whether they are supported by substantial evidence and, if so supported, to uphold that finding. *See Craig*, 76 F.3d at 589; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

In conformance with that duty, the Court has reviewed the record and finds that the ALJ's factual findings are supported by substantial evidence. *Accord*, *e.g.*, [Doc. No. 8-5] at pp. 19, 23-28; [Doc. No. 8-14] at pp. 45, 56; [Doc. No. 8-15] at p. 12; [Doc. No. 8-16] at p. 26; [Doc. No. 8-17] at pp. 37, 46; [Doc. No. 8-18] at p. 47-48. Accordingly, the Court may not disturb those findings. *See* 42 U.S.C. § 405(g); *Hays*, *supra*, at 1456; *Rhyne*, 2010 U.S. Dist. LEXIS 142595, \*9. In addition, the Court finds that, in light of those factual findings, the ALJ correctly applied the regulatory factors for determining the weight to afford Drs. Clayton and Keeley's opinions. *See* 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); *see also* [Doc. No. 8-3] at pp. 39-41. Because the ALJ's findings are supported by substantial evidence, which stands contrary to the opinions of Plaintiff's treating sources, the Court finds that the ALJ correctly applied the law by according those opinions with substantially less than controlling weight. *See Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)); *see also Craig*, 76 F.3d at 590. Plaintiff's argument that the ALJ erred simply because substantial evidence also exists to support the opinions of his treating sources misunderstands the relevant standard, and is therefore without

merit. *See*, *e.g.*, *Craig*, 76 F.3d at 590 ("[I]f a [source's] opinion is . . . inconsistent with other substantial evidence, it should be accorded significantly less weight.").

        D.        Credibility Determination

Plaintiff next challenges the ALJ's credibility assessment. Plaintiff argues that the ALJ incorrectly assessed his credibility by finding his present inability to perform household chores or outdoor activities inconsistent with a finding of his prior ability to do so. *See* [Doc. No. 10] at p. 16. In addition, Plaintiff argues that, though he cared for the needs of certain family members, he had assistance from others in carrying out those activities because it was difficult to care for them on his own. *Id.* Moreover, Plaintiff contends that "the ALJ [improperly] discounted Plaintiff's testimony that his medications make him drowsy and dizzy." *Id.* at p. 17. Finally, Plaintiff asserts that the ALJ improperly found that he was exhibiting "drug seeking behavior" so as to discount his testimony. *Id.* at pp. 16-17. In support, Plaintiff argues that the medical records on which the ALJ relies for this finding do not state that he was "drug seeking," and the ALJ's finding is nothing but mere "conjecture." *Id.*

The law provides a two-part test for evaluating the probative weight to be assigned to a claimant's statements about symptoms. *Craig*, 76 F.3d at 589. First, there must be "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 594 (quotations and citations omitted) (emphasis omitted). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including the claimant's statements about pain, in order to determine whether the person is disabled. *Id.* at 595-96; 20 C.F.R. §§ 416.929(c)(4), 404.1529(c)(4).

While an ALJ must consider a plaintiff's statements and other subjective evidence during the second part of the analysis, he need not credit them to the extent they conflict with the objective medical evidence of record or to the extent the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* at 596. Relevant evidence for this inquiry includes the plaintiff's "medical history, medical signs, and laboratory findings," *id.* at 595, as well as various regulatory factors.[3] The regulations do not mandate that the ALJ discuss all these factors in the decision. *See*, *e.g.*, *Baggett v. Astrue*, 2009 WL 1438209, at *9 (E.D.N.C. 2009). Critically, an ALJ's credibility determination is generally entitled to great deference. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). This is because a reviewing court (such as the district court) does not, and cannot, make credibility assessments. *See Craig*, 76 F.3d at 589.

Here, the ALJ's credibility determination is supported by substantial evidence. Plaintiff's first challenge essentially argues that the ALJ incorrectly analyzed his activities of daily living in negatively assessing his credibility. The Court must note at the outset, however, that Plaintiff's activities of daily living were but one of several factors and considerations involved in the ALJ's credibility assessment. *See* [Doc. No. 8-3] at pp. 33-36 (applying several of the regulatory factors involved in a credibility assessment, as highlighted in footnote 3, *supra*). Even so, Plaintiff's argument must fail. Based on Plaintiff's prior representations to medical providers, the ALJ determined that the Plaintiff was capable of engaging in more substantial activities of daily living than alluded to in either Plaintiff's treating source documents or testimony. *See* Section II.C.,

---

[3] The regulatory factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* S.S.R. 96-7p, 1996 WL 374186, at *3 (listing factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements"). The ALJ both noted and substantially applied these factors in his decision. *See* [Doc. No. 8-3] at pp. 33-36.

*supra*. As is discussed above, the Court has determined that such a finding is based on substantial evidence. *Id.* For credibility purposes, the ALJ was fully entitled to weigh that finding against the Plaintiff's hearing testimony, which purports to indicate that Plaintiff is only capable of diminished activities of daily living. *See* S.S.R. 96-7p, 1996 WL 374186 at *5 ("The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the 'other sources' defined in [the Code of Federal Regulations]."); *Craig*, 76 F.3d at 595. In assessing Plaintiff's credibility, the ALJ determined that Plaintiff's hearing testimony was inconsistent with his prior representations, which are memorialized in the medical records. The ALJ found that such inconsistencies negatively affected Plaintiff's credibility. *See* [Doc. No. 8-3] at pp. 33-34. This Court must defer to that assessment.

Plaintiff next complains that the ALJ wrongly discounted his testimony regarding the undesirable side effects of his medication. [Doc. No. 10] at p. 17. This argument, however, necessarily fails because the ALJ's decision explicitly states that he credited the Plaintiff's testimony on this issue and incorporated it into his residual functional capacity assessment. *See* [Doc. No. 8-3] a p. 35 ("At the September 2013 hearing, the claimant testified that his pain medications make him drowsy and dizzy. . . . I considered the claimant's medication side effects in the above RFC[.]"). Once the ALJ took the side effects of Plaintiff's medication into account, the ALJ determined that Plaintiff did not require "more extensive limitations" than those indicated in the RFC. *See id.* Accordingly, Plaintiff's argument that the ALJ wholly discredited his allegations of medication side effects is without merit.

Lastly, even if the ALJ improperly interpreted Plaintiff's medical records to indicate "drug seeking" behavior, the Court finds that this error is insufficient to require remand on the credibility issue. In his decision, the ALJ noted, specifically, that "[n]o one inconsistency or conflict described

[in the decision] [was] dispositive" in his analysis of the Plaintiff's credibility. *See* [Doc. No. 8-3] at p. 36. Thus, it is clear from the decision itself that Plaintiff's credibility assessment did not hinge upon the ALJ's finding of possible drug seeking behavior; rather, his decision was based upon the record "as a whole" and that all of the "identified evidence sufficiently demonstrate[d] that the [Plaintiff's] allegations lack credibility." *Id.* at p. 36.

Because the ALJ's assessment of Plaintiff's credibility did not turn on his finding of "drug seeking" behavior, because the ALJ supported his credibility assessment with a variety of other findings, and because the ALJ explicitly applied the pertinent regulatory factors in discussing and analyzing Plaintiff's credibility, the Court finds that any error the ALJ committed concerning this one issue is harmless and does not require remand. *See*, *e.g.*, *Farnsworth v. Astrue*, 604 F.Supp.2d 828, 837 (N.D. W. Va. 2009) ("Remand is not required where despite [the] ALJ's error, [the] ALJ would have reached the same result notwithstanding his error." (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994))). Plaintiff has not shown how the ALJ's interpretation of the medical records, even if erroneous, has prejudiced him. *See Camp v. Massanari*, 22 Fed. App'x 311, at *1 (4th Cir. 2001) (finding that an error by the administrative law judge was harmless where the plaintiff "made no showing of prejudice"). Accordingly, remand is inappropriate.

      E.      <u>Hypothetical to the Vocational Expert</u>

Lastly, Plaintiff contends that the ALJ failed to pose a complete hypothetical question to the vocational expert during the last step of the sequential analysis. [Doc. No. 10] at p. 17. However, hypothetical questions presented to the vocational expert need only include limitations supported by the record. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that ALJ's hypothetical question need only include those impairments supported by record); *see also Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (per curiam) (hypothetical question is unimpeachable if it adequately reflects RFC for which ALJ had sufficient evidence); *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) (holding that ALJ is not required to credit VE testimony elicited in response to hypothetical

question that includes limitations that ALJ finds not to be credible). As the Commissioner points out, Plaintiff's argument depends on a finding that the hypothetical is incomplete simply because it does not include limitations supported by those portions of the record to which the ALJ gave little weight or found incredible, i.e., the Plaintiff's treating sources' opinions and Plaintiff's testimony. *See* [Doc. No. 13] at pp. 12-13; *accord* [Doc. No. 8-3] at pp. 48-49 (disregarding Plaintiff's hypotheticals to the vocational expert because such hypotheticals were based "solely" on evidence to which the ALJ gave little weight, such as the claimant's hearing testimony and his physicians' opinions.). Plaintiff *does not* argue that the ALJ's hypothetical did not accurately reflect the RFC, that it did not include all the limitations included in the RFC assessment, or that it did not include limitations that the ALJ found were supported by substantial evidence. Accordingly, this argument is unmeritorious.

For the reasons discussed above, substantial evidence supports the ALJ's consideration of Plaintiff's credibility and the weight given to the Plaintiff's treating source opinions when determining Plaintiff's RFC. Thus, Plaintiff's assertion that the ALJ posed an incomplete hypothetical to the vocational expert must fail.

### III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT**

(1)  The Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **HEREBY DENIED**;

(2)  The Defendant's Motion for Summary Judgment (Doc. No. 12) is **HEREBY GRANTED**;

(3)  The final decision of the Commissioner is **HEREBY AFFIRMED**; and

(4)  Judgment shall be entered by the Clerk accordingly and this case shall be administratively terminated.   Signed: March 30, 2016

**SO ORDERED**.

Richard L. Voorhees
United States District Judge